Good morning. Good morning. Eric Multop, appearing pro bono for Appellant Corbett Le Grand, and I'd like to reserve three minutes for rebuttal. This is a case in which the arbitrariness and unreasonableness of the California Court of Appeal decisions is sufficiently clear-cut that petitioner is entitled to relief under 2254 D. The crux of this case is the petitioner had available an unusually strong and well-supported alibi for the entire time period during which the alleged improper touching could have conceivably occurred under any version of the prosecution's evidence. An alibi like this is a defense attorney's dream, but it was wholly overlooked at the trial level because defense counsel, individually and jointly, were asleep at the wheel. The first court to which this alibi evidence was presented was the California Court of Appeal, and its ruling reflects a particularly arbitrary handling of the evidence. The evidence was presented in a concurrently filed habeas corpus petition, concurrently The Court of Appeal denied the – affirmed the denial of the motion for new trial on direct appeal. Let me ask you, the petitioner's declaration does not say that he told counsel about this, what later became his appeal alibi, the alibi with Ms. Kirby. And do we have any reason to believe that he did, that counsel knew of that alibi? The record shows that counsel failed to ask petitioner about an alibi, failed to assist him in developing an alibi. It's sort of an obvious question. Somebody's on trial, and he knows he wasn't there because he was with his girlfriend during that whole time period. Is the lawyer really expected to have to ask the client, gee, do you have someplace else that you were and do you have evidence that you were someplace else? Your Honor, I understand the question. And it's not – it's a question that puts far too much responsibility on a client under the circumstances of this case. If a person – if a crime occurs on a Friday night and a person's arrested on a Sunday, the person can be presumed to tell his lawyer where he was the previous Friday night. The circumstances in this case are very different. The crime, according to the prosecution, occurred on some indeterminate night during the month of May 2003. And the petition – There's a lot of March. March – But I don't see where that helps you, because look at Ms. Kirby's declaration. She says between February and April of 2003, there wasn't a night they weren't together. So he didn't have to know which particular night, that it was the night before the football sign-up. She's busy saying that whole time we're together. And that's what her mother says, too. Your Honor, if she were busy saying that to the trial attorneys, we wouldn't be here. But your client must have known that. If your client was actually with her every night, then he knew that he wasn't at the campout. He was with her. And he knew that she could corroborate that. Are you reputing that to a young guy who was not working for a law firm 150 hours a week and billing for his time the entire way? He knows there's a crime. He's accused of a crime in March. His former girlfriend – now former girlfriend, then actual girlfriend – turns in a declaration that says during that whole time period, we never spent a night apart. So how is the lawyer supposed to know that if his client doesn't tell him? Well, Your Honor, let's take a look at the evidence here. We have a client who's relying on his lawyer to prepare a defense for him. Does the lawyer know the facts? No. Who knows the facts? The facts are within the knowledge of Petitioner, his girlfriend and the family. If he was really with his girlfriend every night during the period February through April, then he knew – and as a result, he knew he wasn't at the campout and couldn't have committed the crime. He's the one with the knowledge, not the lawyer. Your Honor, this is a – the knowledge may fade after a year. The relationship is broken up. But, Your Honor, here is the point I would like – But here's the difficulty I have with his argument is, in a way, he's saying I really didn't know until after the trial. Now, he was at the trial, correct? Yes. Okay. That's what I thought. So he's at the trial, and they have the evidence about the football sign-up and the campout. How can he say he doesn't know until after the trial? Right there, unfolding before his very eyes, are the allegations. He could say, psst, I never even was in the vicinity for a whole month. Well, because that's – he didn't do that. Nothing happened. So why does – how can we say this is new evidence? That's really my concern when you run it through the courts. It's not a newly discovered evidence standard at this point, Your Honor. It's ineffective assistance because in June 2004, after the arrest, the prosecution presented through discovery to counsel, not the Petitioner personally, a record that indicated when the football sign-ups occurred. And so at that point, it was incumbent on the attorney to say, corporate, we have something we can work with now. We have the time. Now, let me go back. If he makes the motion for a new trial, right? Not him, but his counsel makes the motion for a new trial. And you have to be reasonably probable that absent the counsel's deficiency that the motion would have been granted. But in order for a motion to be granted under the California law, you do need new evidence. And so it folds into whether you have the prejudice standard of Strickland, doesn't it? Your Honor, under California law, a motion for a new trial can be made on the basis of newly discovered evidence or on the basis of ineffective assistance of counsel. The – that motion was based on ineffective assistance of counsel. So the newly discovered evidence aspect of it is really not relevant to whether or not the California court of appeal ruled correctly. Where the – But how do you – how do you account for the fact that he sat through the whole trial, they talked about these specific dates of the sign-up, the camp-out, the different camp-outs, and nothing happened during the whole trial? He's there to tell his counsel, right? Your Honor. Oh, camp-outs. I'm sorry. He's there – okay. He's a – we have a docile defendant, which happens, who's relying on his attorney. And once his supporters, after trial, said, Corbett, we recognized that they were talking about Saturday, March 15th, during the trial. We know you couldn't have been committing this offense on the night of Saturday, March 15th, because we were all in Fremont. They missed the date, misunderstood the date. Defense attorney misunderstood the date. At that point, if the defense attorney had gotten the date down, which he didn't, which is ineffective assistance of counsel, because the knowledge of trial counsel who sat through trial has to be imputed to the other attorney who did the motion for new trial. That's flagrant ineffective assistance of counsel for failure to present the actual You want to save the remaining time? I do. All right. Thank you. Good morning, Your Honors. Huey Long on behalf of Respondent may it please the Court. Since his conviction in this case, appellant has set forth approximately three different variations of an alibi defense, each different variation covering more days than the previous iteration of the defense. The evidence presented by appellant in these different theories of defense were not new evidence. And defense counsel was not ineffective for failing to investigate and look into these defenses. And the reason for that, Your Honors, is, as you mentioned, his alibi was solely within his knowledge. As soon as the complaint was filed in this case, it clearly stated that the alleged incident occurred April – in the month of March of 2003. At that point, appellant was on notice, and he was at the trial, he was on notice of the specific dates at issue here. And if he, in fact, was with his girlfriend, living with her at every single – every night of that particular month, that was the very first thing he should have told his attorney in order to present a defense on his behalf. We believe that there was no deficient performance, therefore. Under Strickland and under Byrd v. Titlow, we must make every presumption in favor of competent representation here by defense counsel. And we believe that they fully looked at the defense evidence that was available and that there was no deficiency representation. Speaking briefly about the prejudice, even if we purport that the evidence – that, in fact, trial counsel was deficient here, the evidence that was presented only covered alibis for the night of March 15th and March 14th specifically. And those dates, as we know, were not likely the dates of the incident based on the evidence produced at trial that showed that Kevin Lee testified that the three – and the appellant were all together several nights before the actual Pop Warner sign-up, which was on March 15th. Furthermore, the evidence in completing appellant in this case was overwhelming. The victim testified – granted, a year later she came forward with the information, but she credibly testified. Kevin Lee put defendant and the victim and himself camping a couple of nights before the Pop Warner registration. And so we believe that based on the – Well, the alibi evidence is pretty strong, too, as alibi evidence goes. I mean, if it got in, you have a by then former girlfriend. You have the former girlfriend's mother who had worked for some time for the district attorney's office. You have evidence of employment someplace other than with the victim's father. Now, if I heard that kind of evidence as a juror, I'd be pretty impressed. The issue with that, Your Honor, is that at trial, appellant's father testified. And his testimony was actually inconsistent with the alibi defense that was – that came out subsequently. Well, I suspect if they had the alibi defense, they wouldn't have had the rather weak alibi defense offered by the father. But it – I mean, even with that information forward, the father's testimony, we do have to look at it. It's said that the relationship between appellant and his girlfriend at the time actually took place and that they were living together in late 2003, early 2004. And so, I mean, trial counsel had to make a call on what defense to put forward. But we believe that the evidence was so strong. If you were trial counsel and you had the choice to present the father's alibi evidence or the alibi evidence now being offered up with the subsequently former girlfriend and the girlfriend's mother and the other employment, which would you choose? It would depend, Your Honor. Certainly, there are more witnesses in favor of his later alibi. But we don't know that defense counsel didn't interview the girlfriend and her mother and realize, you know, they just aren't as credible as the father here. And so we can't make that determination. We must presume that trial counsel actually did his proper responsibility. So if you presume deficient performance, then you're not really giving us an argument that says no prejudice. I mean, you're now making a separate argument that says no prejudice. And my take on that is, gee, you know, this alibi is pretty good. So how can we be confident there wouldn't have been a different result or a reasonable possibility of a different result if that evidence had been submitted to the jury? Well, we should go back to what issue is actually certified for appeal here, which was ineffective assistance of counsel for the motion for a new trial. And since that was the only issue actually certified here, if we look at it from that perspective, the judge would still have to consider the evidence new in order to admit it. And as Your Honors have rightfully noted here, the evidence wasn't new. This was evidence that could have been obtained if it was valid. It could have been obtained by counsel before trial and definitely in time to present a defense. But if we look at the issue from that particular lens, the trial court here would not likely grant the motion for a new trial because this was not new evidence. And to speak briefly about the remedies here, we would submit that appellant is not entitled to a new hearing. The evidence that he presents here was the same evidence presented to the State court of appeal, and the holding of another hearing would not produce anything in addition to what has already been presented and rejected summarily by the court of appeal on State habeas. And with that, we respectfully ask this Court to affirm the judgment of the district court denying the petition for writ of habeas corpus, and we are prepared to submit unless there are any further questions. Thank you, Your Honor. Thank you, Your Honor. You have some time for rebuttal. So let's take a look at the posture of the case of the motion for new trial. You know, I heard the Court's questions. Let's assume for purposes of this argument the petitioner was remiss in not recalling his whereabouts at an indeterminate night in March 2003 after his arrest. It sounds like it's the whole month of March. I mean, she says they're living together for all of March. I don't know if a particular night makes much difference. I understand, Your Honor. So we're putting some fault on the petitioner for not being proactive. At the same time, the record indicates counsel did nothing to investigate, to assist him, to work with him. So we have, let's say we have offsetting penalties going through the trial. He's convicted. We have a chance to remedy a miscarriage of justice because, as you point out, this is a very strong alibi. At the motion for new trial, counsel had within his power to present the very strong alibi with the interlocking and reinforcing live witnesses who were prepared to testify this afternoon if the Court convened a hearing, as well as the documentary evidence of employment. But he blew it. That is the ineffective assistance of counsel that the court of appeal that is before this Court. If counsel had presented the alibi evidence that was presented to the court of appeal through the habeas petition, instead of the wrong alibi for the wrong date at the motion for new trial, the trial court would have likely, in contrast to what my esteemed opponent from the attorney general's office says, recognized that a fundamental miscarriage of justice had occurred and granted the motion for new trial, after which the chances of an acquittal would have risen dramatically. That's what we're asking the Court to do, provide him with relief under 2254d. Thank you. Thank you. The case of Legrand v. Yates has submitted. I'd also like to thank you, Mr. Malthoff, for your pro bono service on behalf of Mr. Legrand.
judges: TASHIMA, McKEOWN, CLIFTON